IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
JUL 15 2014
CLERK

| ART AADLAND and ELLEN AADLAND, Plaintiffs, v. MIDWEST FAMILY MUTUAL INSURANCE COMPANY, Defendant. | CIV: 14-4109 **COMPLAINT AND DEMAND FOR JURY TRIAL** |
|---|---|

COMES NOW Plaintiffs, Art and Ellen Aadland ("the Aadlands"), by and through their counsel of record, Michael L. Luce of Murphy, Goldammer & Prendergast, LLP, and for their causes of action against Defendant, Midwest Family Mutual Insurance Company ("MFMIC") state and allege as follows:

## PARTIES

1. The Aadlands, as husband and wife, are individuals residing in Minnehaha County, South Dakota.

2. MFMIC is an insurance company whose principal place of business and state of incorporation is a state other than South Dakota.

## JURISDICTION

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 based upon the parties' citizenship and the fact that the amount in controversy exceeds $75,000.

## VENUE

4. Venue is proper with this Court pursuant to 29 U.S.C. §1391(b) because the insurance was obtained here in the State of South Dakota, the loss occurred in the

State of South Dakota, and this matter was handled with the Aadlands while they have been residing in the State of South Dakota and, accordingly, the injuries suffered by the Aadlands occurred within the District of South Dakota.

## FACTS

5.     For several decades, the Aadlands have operated a small business known as Aadland Pipe Organ Company.

6.     Art Aadland is one of a select group of organ builders in the United States, and the Aadlands' business primarily involves building and repairing church organs.

7.     Since approximately 1991, the Aadlands have operated their business in a building located at 306 Jackson Street in Valley Springs, South Dakota.

8.     Because the Aadlands used this building to work on church organs that have significant value, it has been important for them to maintain insurance protecting the building and its contents.

9.     The Aadlands have obtained their insurance through the North Central Insurance Agency for over 20 years on this building, have consistently kept it insured, and have paid premiums for that insurance.

10.    Over this period in excess of 20 years, the Aadlands did not submit claims on the building until the ice storm in April, 2013.

11.    The Aadlands' insurance was switched by North Central Insurance Agency from Continental Western to MFMIC on May 28, 2012. That policy was for one year and would have covered losses that occurred from May 28, 2012 through May 28, 2013.

12. MFMIC renewed the Aadlands' policy for another year, which would have covered losses from the period of May 28, 2013 through May 28, 2014.

13. With MFMIC issuing policies for these years, the Aadlands relied on MFMIC to provide insurance protection for its building and its contents, and to promptly pay losses that would be covered under the policy, and handle claims that were submitted in good faith and with fair dealing.

14. In handling claims, adjusting losses and paying benefits due and owing, MFMIC was obligated to follow South Dakota law, including the South Dakota law on Unfair Claims Practices, SDCL 58-33.

15. At the time insurance on this building was obtained with MFMIC, MFMIC issued the policy based upon a determination that the actual cash value of the building was $78,000, which was revised to $117,000.

16. At the time the insurance on this building was obtained with MFMIC, MFMIC had an opportunity to inspect the building and determine that it was in a condition for which MFMIC wanted to insure the building.

17. This inspection would also assist in determining the actual cash value of the building for insurance purposes.

18. When the policy was renewed by MFMIC (several weeks before the ice storm in April, 2013), MFMIC set the actual cash value of the building at $117,000.

19. With any increased value being placed on the building, MFMIC would collect an additional amount on the premium for the insurance.

20. At the time that this policy was renewed on May 28, 2013, MFMIC would have had an opportunity to inspect the building and determine that the building was in a condition for which they wanted to insure it.

21. This inspection would also assist in determining the actual cash value of the building for insurance purposes.

22. At no time prior to the ice storm in April, 2013, had MFMIC ever indicated that the building was not worth the cash value which had been placed on it and for which a premium was paid, or that the building was not in a condition which MFMIC felt should be insured.

23. The City of Sioux Falls and its surrounding areas, such as Valley Springs, South Dakota, suffered a major ice storm on April 9, 2013, and the days thereafter.

24. This ice storm was so significant and such a major weather event that the City of Sioux Falls itself estimated that the City's cost to respond to this three-day storm was $9,000,000, and that power was knocked out to more than 115,000 people in that storm event.

25. One of the reasons that citizens such as the Aadlands obtain property insurance and pay premiums for such insurance is to provide protection for such unexpected and major weather events, such as this ice storm in April, 2013.

26. One of the duties and responsibilities of insurance companies, such as MFMIC, when a major weather event such as this ice storm in April, 2013 occurs, is to properly investigate the claim, including weather conditions that occurred, assess the damages occurring to property as a result of the weather event, and to properly determine the amount of the loss due to that weather event.

27. After this ice storm in April, 2013, Art Aadland noticed that he had significant water leaks into his building and observed damage to the building's roof, ceiling and structure.

28. There was significant ice that was loaded onto this roof, and tree branches had fallen onto the roof.

29. Furthermore, a garage door into the building, which had operated properly and had sufficient clearance prior to this ice storm, no longer worked properly and did not have sufficient clearance.

30. After noticing this problem with the garage door, indicating structural damage to the building, Art Aadland promptly submitted an insurance claim.

31. MFMIC assigned the claim to its local adjustor who, instead of paying the claim, looked into a basis for denying the claim, raising issues about the age and condition of the building, maintenance and upkeep, and soliciting the assistance of an engineer.

32. MFMIC failed to properly investigate this claim and determine what damage occurred to this building as a result of this ice storm in April, 2013.

33. Part of a proper investigation as to whether a weather event caused damage to a building is an accurate understanding and investigation as to the weather event.

34. A tornado should not be described as a breeze. Likewise, an ice storm with such large amounts of ice that large trees, power lines and physical structures were damaged, should not be described as a light drizzle.

35. In denying this claim, MFMIC has indicated that the only weather information they obtained was weather information from Luverne, MN, and that internet site indicated that there was ".52 precipitation on April 9, 2013," and weather for that day was reported to be "light drizzle, light rain, drizzle, thunderstorm and snow, light thunderstorm and snow."

36. In doing its investigation, MFMIC did not even acknowledge that this was an ice storm.

37. MFMIC has taken the position that it performed a thorough and complete investigation of this claim to determine coverage.

38. MFMIC, in determining coverage, had the obligation to investigate the facts and review the applicable policy and look for all potential coverage under that policy for this weather event.

39. MFMIC had an obligation to inform the Aadlands as to the basis for its determination that there was no coverage, and MFMIC sent a letter to the Aadlands dated September 27, 2013, which purportedly sets forth the complete basis for that determination.

40. At no time has MFMIC given any other reasons for denying coverage and, in fact, MFMIC reiterated that basis for the denial in a follow-up letter dated December 3, 2013.

41. MFMIC made the determination that the insurance policy provided no commercial property coverage to the building as a result of this April, 2013 ice storm, but that there was coverage for the water damage to certain personal property.

However, as of the date of this Complaint, MFMIC has still not paid any benefits for the water damage to the personal property.

42. Over 60 days ago, MFMIC indicated they would be having their adjustor make contact to inspect the items and to pay this claim, which they have not followed through with.

43. MFMIC did not pay benefits to the Aadlands, due and owing under the policy, and instead chose to unilaterally cancel the policy after this claim was made. Even though the policy provided coverage through May 28, 2014, the Aadlands were informed by MFMIC that the policy was cancelled as of November 24, 2013, leaving them without any insurance for the building, the contents, and any valuable organs in the Aadlands' possession.

44. The excuse given for the cancellation was a "material change in risk."

45. MFMIC claims that as a result of the investigation of this ice storm claim, it determined that the building is no longer structurally sound and should no longer be considered safe to occupy.

46. MFMIC determined that the building is substantially impaired and could collapse.

47. MFMIC has failed to provide any investigation materials or explanation as to what material change occurred in this building from the time the policy was renewed on May 28, 2013, until the ice storm (two weeks later) on April 9, 2013, which no longer made it structurally sound to occupy, other than the structural damage that occurred in the ice storm of April, 2013.

48. The wrongful actions of MFMIC have been stressful, damaging to the welfare of the Aadlands, and have caused the Aadlands to suffer an economic loss.

49. As a result of MFMIC's refusal to pay the benefits due and owing, and in cancelling the policy, the Aadlands have suffered losses and damages, including the expenses necessary to retain legal counsel to protect their rights under the policy.

50. The Aadlands, who, in the operation of their business, do not need to regularly consult of an attorney, needed to seek legal advice as a result of the position they were placed in when coverage was denied, when no proper explanation was given under the facts in the policy for that denial, and when the policy that the Aadlands had obtained was unexpectedly and abruptly cancelled.

**COUNT I**
**BREACH OF CONTRACT**

51. The Aadlands reallege the allegations of each above paragraphs as though fully set forth herein and incorporate the same by reference.

52. Despite demands for payment, MFMIC has not paid insurance proceeds due and payable to the Aadlands under the policy issued by MFMIC.

53. MFMIC wrongfully cancelled the policy with the Aadlands after the claim was submitted.

54. MFMIC's failure to pay the Aadlands' insurance proceeds due and owing, and failure to properly investigate this matter, handle the claim in a timely fashion, and its unilateral decision to improperly cancel the policy, constitutes breaches of the insurance policies.

55. As a legal cause of the breaches by MFMIC of the insurance policies, the Aadlands have sustained damages in an amount to be determined at the time of trial,

which damages are well in excess of $75,000, as the building itself, which MFMIC claim can no longer be occupied and is thereby wholly destroyed, had a value of $117,000. In addition, the Aadlands have incurred legal fees, costs, damages for contents, and other damages relating to the improper denial of benefits, as well as the improper cancellation of the policy.

## COUNT II
## BAD FAITH

56. The Aadlands reallege the allegations of each above paragraphs as though fully set forth herein and incorporate the same by reference.

57. MFMIC, as a corporation, must act through its employees, agents and representatives. Said individuals had the consent and authority of MFMIC, at all times material hereto, and those actions bind the company under the doctrine of respondeat superior.

58. MFMIC denied this claim without a reasonable basis, without doing a prompt and adequate investigation, and without providing a prompt and full explanation to the Aadlands as to the position being taken.

59. Furthermore, after the Aadlands made this claim for insurance benefits, rather than paying the benefits due and owing, MFMIC chose to wrongfully terminate the insurance policy, jeopardizing the Aadlands' business.

60. This was done for purposes of discouraging, avoiding or reducing the compensation due to the Aadlands, as well as discouraging, avoiding or reducing claims, and thereby increasing the profits for MFMIC.

61. MFMIC either knew or should have known of the lack of reasonable basis for both its denial of benefits and/or its termination of the policy.

62. MFMIC denied coverage and terminated the policy, in violation of the covenant of good faith and fair dealing, and acted in bad faith.

63. MFMIC breached its duty to adjust the claim in good faith and to do a thorough and proper investigation, including a review of all irnportant sources of information, to properly adjust this loss.

64. As a legal result of the unreasonable and bad faith conduct set forth above, the Aadlands have suffered economic and consequential damages in an amount to be shown at trial.

65. As a further legal result of the conduct of MFMIC, the Aadlands have suffered anxiety, frustration, mental anguish, incurred legal fees and great inconvenience, all to the Aadlands' general damages in a sum to be determined at the time of trial.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66. The Aadlands reallege the allegations of each above paragraphs as though fully set forth herein and incorporate the same by reference.

67. MFMIC's conduct was extreme and outrageous.

68. MFMIC knew or, in the exercise of reasonable care, should have known, that the Aadlands would suffer serious emotional distress as a result of the conduct of MFMIC.

69. MFMIC acted with reckless, intentional and deliberate disregard for the likelihood that the Aadlands would suffer emotional distress as a direct and proximate result of the conduct of MFMIC.

70. As a legal result of this conduct, the Aadlands have experienced financial loss and hardship, severe emotional and physical distress, costs, and an extremely disabling emotional response.

71. The Aadlands are entitled to damages as a result of MFMIC's intentional infliction of emotional distress.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**

72. The Aadlands reallege the allegations of each above paragraphs as though fully set forth herein and incorporate the same by reference.

73. MFMIC owed a fiduciary duty to the Aadlands.

74. MFMIC breached that duty.

75. As a legal result of this breach, the Aadlands have experienced financial loss and hardship, severe emotional and physical distress, shame and embarrassment, along with other costs and fees.

76. The Aadlands are entitled to damages as a result of MFMIC's breach of its fiduciary duty owed to the Aadlands.

**COUNT V**
**UNFAIR DECEPTIVE TRADE PRACTICES**

77. The Aadlands reallege the allegations of each above paragraphs as though fully set forth herein and incorporate the same by reference.

78. MFMIC owed a duty to the Aadlands to provide insurance and handle this claim without engaging in an unfair or deceptive insurance practices.

79. MFMIC breached that duty and undertook an unfair deceptive trade practice, as set forth in SDCL § 58-33-67.

80. As a legal result of that unfair deceptive insurance practices, the Aadlands have experienced financial loss and hardship, severe emotional and physical distress, and shame and embarrassment. They have also incurred fees and expenses.

81. The Aadlands are entitled to damages as a result of MFMIC's unfair deceptive insurance practices.

**COUNT VI**
**PUNITIVE DAMAGES**

82. The Aadlands reallege the allegations of each above paragraphs as though fully set forth herein and incorporate the same by reference.

83. MFMIC has acted with oppression, fraud, express or implied malice, and a reckless disregard for the rights of the Aadlands for benefits due and owing under the insurance policy, or the protection of the insurance policy for the remaining term of the policy, together with promptly and timely paying benefits, and a fair handling of the insurance claim, which all resulted in the intentional infliction of emotional distress upon the Aadlands.

84. Punitive damages are appropriate in this case, pursuant to SDCL § 21-3-2, in order to punish and deter MFMIC from continuing in this course of conduct.

**COUNT VII**
**ATTORNEY'S FEES**

85. The Aadlands reallege the allegations of each above paragraphs as though fully set forth herein and incorporate the same by reference.

86. MFMIC's refusal to pay benefits in a timely fashion, or to pay benefits due and owing under the terms of the insurance policy, was vexatious or without reasonable cause, thereby entitling the Aadlands to attorney's fees under SDCL § 58-12-3.

87. MFMIC's unfair or deceptive insurance practices entitles the Aadlands to attorney's fees under SDCL § 58-33-46.1.

WHEREFORE, the Aadlands pray for judgment against MFMIC for such damages as are proven at the time of trial, well in excess of $75,000, together with punitive damages, prejudgment interest, post-judgment interest, attorney's fees, costs, and such further and other relief as the Court deems just and proper.

Dated this 15th day of July, 2014.

MURPHY, GOLDAMMER
& PRENDERGAST, LLP

Michael L. Luce (mike@mgplawfirm.com)
101 North Phillips Avenue
Wells Fargo Building, Suite 402
Post Office Box 1535
Sioux Falls, SD 57101-1535
Telephone: (605) 331-2975
Facsimile: (605) 331-6473
*Attorney for Plaintiffs*

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury on the causes of action presented by their Complaint.

Dated this 15th day of July, 2014

MURPHY, GOLDAMMER
& PRENDERGAST, LLP

Michael L. Luce